UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON D., JR.,<br><br>                              Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner<br>of Social Security,[1]<br><br>                              Defendant. | Case No.:  18-cv-02624-LAB-JLB<br><br>**REPORT AND<br>RECOMMENDATION**<br><br><br><br>**[ECF No. 15]** |

## I.      <u>INTRODUCTION</u>

Before the Court is Plaintiff Leon D., Jr.'s Motion for Summary Judgment.  (ECF No. 15.)  Plaintiff moves under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act.  The Commissioner opposes Plaintiff's motion.  (ECF No. 16.)

---

[1]      Andrew Saul is hereby substituted as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

This Report and Recommendation is submitted to United States District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  After a careful review of the moving and opposing papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment.

## II.   PROCEDURAL BACKGROUND

On April 6, 2015, Plaintiff filed a claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability commencing August 14, 2014, his amended onset date.[2]  (Administrative Record ("AR") 30, 137.)  After his application was denied initially on August 14, 2015, and upon reconsideration on October 23, 2015, Plaintiff timely requested a hearing before an administrative law judge ("ALJ") on October 26, 2015.  (AR 50, 61, 82.)  On November 8, 2017, Plaintiff, his attorney, and vocational expert ("VE") Erin Welsh appeared before ALJ Howard K. Treblin ("the ALJ").  (AR 27.)  In a decision dated January 31, 2018, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act.  (AR 22.)  The ALJ's decision became the final decision of the Commissioner on September 24, 2018, when the Appeals Council denied Plaintiff's request for review.  (AR 1.)  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)

## III.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged disability onset date of August 14, 2014, through his date last insured of December 31, 2017.  (AR 17.)  At Step

---

[2]     Plaintiff initially alleged that he became disabled on August 14, 2012.  (AR 137.) However, at the administrative hearing, Plaintiff's counsel amended the disability onset date to August 14, 2014.  (AR 30.)

Two, the ALJ found that Plaintiff had the following severe impairments: a spinal disorder, dysfunction of major joints, hypertension, and sprains and strains.  (*Id.*)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 20.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC"):

> to perform a wide range of medium work as defined in 20 C.F.R. § 404.1567(c).  Specifically, [Plaintiff] was able to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently.  He was able to sit, stand or walk up to 6 hours each in an 8-hour workday.  [Plaintiff was] able to perform positional tasks such as climbing stairs, crouching, kneeling, balancing, or stooping on a frequent, but not constant basis.

(*Id.*)

At Step Four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as a motor coach operator, DOT 913.463-010.[3]  (AR 21–22.)  The ALJ relied on the VE's testimony that work as a motor coach operator "did not require the performance of work-related activities precluded" by Plaintiff's RFC.  (*Id.*)  After comparing Plaintiff's RFC with the physical and mental demands of a motor coach operator, the ALJ found that Plaintiff was able to perform past relevant work "as actually and generally performed" and concurred with the VE's testimony.  (AR 22.)  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act and did not proceed to Step Five of the sequential evaluation process—whether Plaintiff was able to perform other types of substantial gainful work that exists in the national economy.  (*Id.*)

///

///

---

[3]     The ALJ cites 913.452-010 as the DOT code for motor coach operator, which is incorrect.  913.463-010—the code testified by the VE during the administrative hearing—is correct.  (*See* AR 36.)

## IV.   STANDARD OF REVIEW

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.  *See* 42 U.S.C. § 405(g).  The scope of judicial review, however, is limited.  The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by substantial evidence in the record as a whole.  *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).  Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).  Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  *Id.*; *accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  *See Lewis*, 236 F.3d at 509.

## V.   PLAINTIFF'S CLAIMS OF ERROR

In his Motion for Summary Judgment, Plaintiff claims that the ALJ erred in weighing the medical opinions of Plaintiff's treating physician, Dr. Jeffrey Dysart, and two orthopedic consultative examiners, Dr. Thomas J. Sabourin and Dr. Zaven Bilezikjian. Specifically, Plaintiff argues that the ALJ improperly rejected Dr. Dysart's opinion and was required, but failed, to consider the factors set forth in 20 C.F.R. § 404.1527(c) when giving Dr. Dysart's opinion as a treating physician less than controlling weight.  Plaintiff ///

further argues that the ALJ improperly rejected Dr. Sabourin's opinion and credited Dr. Bilezikjian's opinion over Dr. Sabourin's without explanation.

## VI.   SUMMARY OF THE RELEVANT MEDICAL EVIDENCE

### A.   Dr. Dysart

Plaintiff testified at the administrative hearing that Dr. Dysart is his "primary doctor" and, at that time, had been treating Plaintiff for approximately twenty-five years. (AR 34.) Plaintiff has an appointment with Dr. Dysart "once [e]very couple of months . . . when the need arises." (*Id.*)   Despite Plaintiff's long treatment history with Dr. Dysart, the administrative record contains few records from Dr. Dysart; only four treatment records and a Physical Medical Source Statement ("MSS") from Dr. Dysart are included, which are summarized here.

- On October 30, 2012, Plaintiff visited Dr. Dysart for hypertension and a flu shot. (AR 249.) Dr. Dysart refilled Plaintiff's 10mg Amlodipine Besylate prescription, which he was to take daily for blood pressure control. (AR 249, 251.) Dr. Dysart's physical exam of Plaintiff reported no abnormalities. (AR 249–50.)

- On July 30, 2015, Plaintiff saw Dr. Dysart for a follow-up visit after being treated in an emergency room for GERD and an irregular heart rate with an EKG within normal limits. (AR 293.) Dr. Dysart diagnosed Plaintiff with acid reflux and advised that Plaintiff follow a healthy–heart diet for high cholesterol treatment. (AR 294–95.) Dr. Dysart prescribed Plaintiff 40mg of Lisinopril to take daily for blood pressure control, in addition to the 10mg of Amlodipine Besylate. (AR 295.) Dr. Dysart's physical exam of Plaintiff reported no abnormalities. (AR 293–94.)

- On August 8, 2015, Dr. Dysart ordered a TSH test, the results of which do not appear in the record. (AR 302–03.)

- On August 17, 2015, Plaintiff visited Dr. Dysart for an irregular heartbeat and upper GI problems. (AR 297.) Dr. Dysart prescribed Plaintiff 10mg of Propranolol Hcl to take daily for recurrent palpitations. (AR 299.) Dr. Dysart's physical exam of Plaintiff reported no abnormalities. (AR 298–99.)

- On September 19, 2017, Dr. Dysart completed an MSS regarding Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. (AR 313–14.) In the MSS, Dr. Dysart opined that Plaintiff has had the following limitations "since before 2013": He could lift and carry only ten pounds, whether on an occasional or frequent basis. (AR 313.) He could stand and walk for about six hours during an eight-hour day but could sit less than two hours during an eight-hour day. (*Id.*) He could sit for thirty minutes and stand for fifteen minutes before changing position and would need to walk around every thirty minutes for ten minutes. (*Id.*) He would need the opportunity to shift at will from sitting or standing/walking. (*Id.*) The medical finding that supported these exertional limitations was "limited [range of motion] of back." (*Id.*) Additionally, he could never twist, crouch, or climb stairs or ladders and could occasionally stoop (bend)." (AR 314.) The medical finding that supported these positional limitations was "limited back [range of motion]." (*Id.*) "[L]imited back [range of motion]" also affected his ability to push and pull. (*Id.*) On average, he would be absent from work about three days per month due to his impairments or treatment. (*Id.*)

## B.   Dr. Sabourin

Plaintiff saw Dr. Sabourin, a board-certified orthopedic surgeon, once on May 20, 2014, for a consultative examination. (AR 255, 259.) Plaintiff testified at the administrative hearing that his appointment with Dr. Sabourin lasted at most thirty minutes. (AR 35.)

Plaintiff's chief complaints to Dr. Sabourin were of lower back pain that radiated to his hips and pain in his left knee. (AR 255.) Upon examination of Plaintiff's lower back, Dr. Sabourin assessed a normal range of motion of the lumbar spine without pain and minimal tenderness in the paralumbar area. (AR 257.) There was no palpable spasm, swelling, or heat. (*Id.*) Straight leg raising tests in both the sitting and supine positions were negative. (*Id.*) Plaintiff had a normal gait and was able to sit and stand with normal posture and easily get on and off the examination table. (AR 256.) Dr. Sabourin's

diagnostic impression of Plaintiff's lower back pain was "[c]hronic lumbar strain and sprain." (AR 258.) Dr. Sabourin noted that Plaintiff, as a 61-year-old, "would have degenerative changes in his spine at this point, which would give him some of his back problems." (*Id.*) Dr. Sabourin found that Plaintiff "most likely" had "early degenerative disc disease of the lumbar spine, but without neurological deficit." (*Id.*)

Upon examination of Plaintiff's knees, Dr. Sabourin assessed a "slight warmth" and "significant effusion" in the left knee and reduced range of motion in both knees. (AR 257–58.) A knee's normal range of motion is 0–150, and Plaintiff's range was 0–135 for the right knee and 0–130 for the left knee. (AR 257.) Plaintiff's knees otherwise showed no instability, tenderness, crepitus, or gross deformities, and a McMurray test was negative. (*Id.*) Dr. Sabourin's diagnostic impression of Plaintiff's left knee pain was a "large effusion" with "undetermined etiology." (AR 258.) Dr. Sabourin found Plaintiff's left knee impairment "more significant" than his back impairment, for his left knee showed "chronic effusion and synovitis," and Plaintiff had a "problem with his left knee extending for over a year." (*Id.*)

Dr. Sabourin assessed Plaintiff to have the following work-related limitations:

> [H]e could only lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk up to six hours of an eight-hour workday with those lightweights and sit for six hours of an eight-hour workday. Push and pull limitations will be 50 pounds occasionally and 25 pounds frequently. He is unable to walk on uneven terrain except occasionally[,] and he can climb, kneel and crouch only occasionally. He could stoop frequently. He has no manipulative limitations. He does not use assistive devices to ambulate.

(*Id.*) Dr. Sabourin opined that Plaintiff's limitations were "mainly due to the chronic left knee problem," which at that time had "been present for more than a year." (*Id.*)

Following his consultation with Dr. Sabourin, x-rays were taken of Plaintiff's left knee on June 20, 2014. (AR 264.) The x-rays showed osteopenia, "[s]mall spurs. . . from the medical articular margins of the femur and tibia and minimally from the dorsal margin of the patella," "mild narrowing of the medical compartment joint space," "a small joint

effusion," and "[m]ultiple small oval calcifications . . . in the dorsal aspect of the joint." (*Id.*) The radiologist's diagnostic impression was early osteoarthritis with "[s]oft tissue calcifications dorsally." (*Id.*)

## C. Dr. Bilezikjian

Plaintiff saw Dr. Bilezikjian, a diplomate of the American Board of Orthopaedic Surgery, for a second consultative examination on July 24, 2015. (AR 280.) Plaintiff testified at the administrative hearing that his appointment with Dr. Sabourin lasted at most thirty minutes. (AR 35.)

Plaintiff's chief complaints to Dr. Bilezikjian were of pain in his back and left knee. (AR 280.) Plaintiff provided Dr. Bilezikjian with a history of his back and knee issues, which Dr. Bilezikjian summarized as follows:

> The back pain started 10 years ago without any injury. The pain is intermittent. It occurs when he does the wrong motion such as twisting his back or lifting or bending, and he feels a severe catching in his back. The pain lasts 3-5 days and then subsides. In between these episodes he is fine. He has had x-rays done which showed degenerative changes there. He is not taking any medications at the present time for pain. He has no pain at all.

> He had a twisting injury of the left knee in 2013 when the left knee became very swollen and painful. Since then he has had repeated giving way of the left knee, occasional swelling, pain with prolonged standing and walking, and sometimes there is some discomfort posteriorly but most of the time it is anterior and anteromedial. He has had no specific evaluations. The only x-rays done were the ones that were done by Dr. Soverin [sic].

(*Id.* at 280–81.)

Upon examination of Plaintiff's lumbar spine, Plaintiff did not "complain of tenderness to palpation throughout the lower back" and there was no evidence of increased muscle tone or spasm. (AR 282.) Straight leg raising tests in both the sitting and supine positions were negative bilaterally. (*Id.*) Dr. Bilezikjian's diagnostic impressions were of "[d]egenerative arthritis, lumbosacral spine, with intermittent low back pain, superimposed over degenerative changes with no radiculitis or radiculopathy." (AR 283.)

Upon examination of Plaintiff's lower extremities, there was "no evidence of swelling, effusion, erythema, warmth, or deformity of any joints." (AR 282.) Plaintiff displayed full range of motion in his knees but some crepitus in the left knee was noted along with minimal joint line tenderness. (*Id.*) There was no ligamentous instability, and a McMurray test "did not cause any pain or clicking." (*Id.*) Dr. Bilezikjian's diagnostic impressions were of "early to moderate degenerative arthritis with possible torn meniscus" in the left knee and "intermittent giving way of the left knee." (AR 283.)

Dr. Bilezikjian assessed Plaintiff as having the following work-related limitations:

> [T]he claimant is able to push, pull, lift, and carry 50 pounds occasionally and 25 pounds frequently. Walking and standing can be done 6 hours per day with regular rest periods. No assistive device is required for ambulation. Postural activities such as bending and stooping can be done on a frequent basis. Kneeling and squatting can be done on an occasional basis. The claimant can walk on uneven terrain and occasionally climb ladders. Sitting can be done 6-8 hours per day. Fine and gross manipulative movements can be done without restrictions.

(*Id.*)

## D.   Plaintiff's Testimony Concerning Pain

At the administrative hearing, Plaintiff testified that he had pain in his left knee, left shoulder, and lower back but did not take any medication to relieve his pain "because of the delirious side effects." (AR 32.) Plaintiff further testified that he did not try to relieve his pain by other means, such as lying down, taking hot baths, or using ice. (*Id.*) Plaintiff also testified that he rejected a suggestion by Dr. Dysart that he take pain medication for his arthritis because "aspirin upsets [his] stomach" and because of "addictive issues" with narcotics generally and ibuprofen's "link[] to liver and kidney failure." (AR 34–35.)

///
///
///
///
///

## VII.   DISCUSSION

**A.     Whether the ALJ properly rejected Dr. Dysart's opinion and satisfied his duty to consider the 20 C.F.R. § 404.1527(c) factors**

1.     Parties' Arguments

In his Motion for Summary Judgment, Plaintiff's predominant argument is that the ALJ was required, but failed, to consider the factors set forth in 20 C.F.R. § 404.1527(c) when assigning less than controlling weight to Dr. Dysart's opinion as Plaintiff's treating physician. (ECF No. 15-1 at 4.)  Plaintiff maintains that the ALJ did not discuss any of the § 404.1527(c) factors, or even mention § 404.1527, and the only factor the ALJ arguably raised is consistency with the record.  (*Id.*)  Plaintiff emphasizes that the ALJ did not discuss his "long treatment history with Dr. Dysart," the first § 404.1527(c) factor, and Dr. Dysart treated him "since at least 2012."  (*Id.* at 4–5.) Plaintiff suggests that his treatment history with Dr. Dysart "should be important enough to at least be discussed in the decision" when there is "so little objective evidence" in the record.  (*Id.* at 5.)

In his opposition, the Commissioner argues that Plaintiff's position is undermined by "relevant legal authority" and cites to Ninth Circuit authority that provides that an ALJ need not "make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)."  (ECF No. 16 at 9–10 (quoting *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2008)).)  The Commissioner asserts that, nevertheless, the ALJ "expressly considered treating and examining relationships and the specialties of the examining physicians." (*Id.* at 10.)

Additionally, the Commissioner argues that the ALJ properly rejected Dr. Dysart's opinion.  (*Id.* at 5.)  The Commissioner contends that the ALJ "expressly noted" that Dr. Dysart's earlier treatment records, which "consistently had full range of motion," "belied" his later opinion in the MSS that Plaintiff was "largely unable to sustain basic work activities due to limited range of motion in his back."  (*Id.* at 7.)  The Commissioner also contends that the ALJ noted that Plaintiff had "largely intact range of motion (as well as

normal gait, strength, sensation reflexes, and straight leg raise testing) during his consultative physical examinations." (*Id.* at 8.)

In reply, Plaintiff argues that the Commissioner "completely ignores [his] main position" that the ALJ failed to "provide specific and detailed reasoning for rejecting the treating physician's opinion." (ECF No. 17 at 1.)  Plaintiff states that, "as previously argued,"[4] the ALJ was required to provided "specific and legitimate reasons that are supported by substantial evidence" to reject Dr. Dysart's opinion. (*Id.*)

2.  <u>Legal Standard</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the claimant; (2) those who examined but did not treat the claimant; and (3) those who did neither.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, and an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion.  *Id.*  This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Under the regulations governing claims filed before March 27, 2017, such as here, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  20 C.F.R. § 404.1527(c)(2).  Where substantial evidence in the record contradicts the treating physician's opinion, or the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, it is no longer entitled to controlling weight.  *Id.*; *see also Orn v. Astrue*, 495

---

[4]      This protestation is confusing, as Plaintiff's Motion for Summary Judgment contains no argument that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Dysart's opinion; this argument is first made in the Reply.

F.3d 625, 632 (9th Cir. 2007).  That does not mean, however, that the opinion should be rejected, for "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Orn*, 495 F.3d at 632–33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" (quoting SSR 96-2p, 1996 WL 374188, at *4)).  The factors an ALJ must consider when weighing the opinion include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the opinion; (4) the consistency with the record as a whole; (5) the physician's area of specialization; and (6) and a catch-all category of "other factors" brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2)–(3).

The law is well established in the Ninth Circuit that, if the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.  Where a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth "specific and legitimate reasons" that are based on "substantial evidence in the record" for rejecting the opinion. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

   3.   Discussion

As noted above, Dr. Dysart completed an MSS opining on Plaintiff's ability to do work-related activities.  (AR 313–14.)  The ALJ addressed Dr. Dysart's opinion as follows:

> Of note, the claimant's treating physician[], Jeffrey Dysart, M.D., submitted *a Physical Medical Source Statement (MSS)*, dated September 19, 2017. (Exhibit 9F).  Dr. Dysart opined that the claimant could only lift or carry up to 10 pounds whether occasionally or frequently.  He found that the claimant could stand or walk for 6 hours in an 8-hour workday, but would have a maximum ability to sit[] "less than 2 hours" in an 8[-]hour workday.  He indicated that the claimant could sit up to 30 minutes at one time, but less than 2 hours in an 8[-]hour workday.  Dr. Dysart stated that the claimant could stand up to 15 minutes at one time, and walk for 30 minutes at one time, and

do both for up to six hours in an 8[-]hour workday.  He further stated that the claimant would need to shift positions at will from sitting or standing/ walking.  When asked what medical findings would undergird these rather severe assertions, he stated "limited range of motion of back."

Positionally, he found the claimant could essentially never twist, crouch, or climb stairs or ladders, again, due to "limited back range of motion."

Dr. Dysart finished the form by stating that his patient's impairments or treatment would cause him to be absent from work about three days per month.  (Exhibit 9F, page 2).  The undersigned ALJ has reviewed this form, and gives Dr. Dysart's assessment minimal weight.  The undersigned ALJ does not find that Dr. Dysart's assertions are supported by the evidence.  As an example of this, in examinations found at Exhibit 6F, the claimant has full range of motion of all joints.  Additionally, on both of the claimant's Orthopedic Examinations, he had minimal restricted ranges of motion, and minimal pain, described as "tenderness."  Accordingly, the undersigned finds that Dr. Dysart' s assessment is not consistent with the record as a whole, including clinical examinations and findings.

(AR 19.)

      a.    *Whether the ALJ provided legally sufficient reasons for rejecting Dr. Dysart's opinion*

Dr. Dysart's opinion that Plaintiff could perform at essentially a sedentary[5] level of work was not uncontroverted—both orthopedic consultative examiners opined that Plaintiff could work at higher exertional levels.  Dr. Sabourin opined that Plaintiff "could only lift or carry 20 pounds occasionally and 10 pounds frequently" and therefore could perform light work.[6]  (AR 258.)  Dr. Bilezikjian opined that Plaintiff was "able to push,

---

[5]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[6]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be

pull, lift, and carry 50 pounds occasionally and 25 pounds frequently" and therefore could perform medium work.[7] (AR 283.) Because Dr. Dysart's opinion was contradicted by the examining physicians' opinions, the ALJ was required to provide specific and legitimate reasons based on the substantial evidence in the record for rejecting Dr. Dysart's opinion. *See Lester*, 81 F.3d at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for doing so.").

The Commissioner would seem to suggest that the ALJ gave two specific and legitimate reasons for rejecting Dr. Dysart's opinion: (1) Dr. Dysart's earlier treatment records, which consistently noted that Plaintiff "had full range of motion," were inconsistent with Dr. Dysart's opinion in the MSS that Plaintiff was "largely unable to sustain basic work activities due to limited range of motion in his back"; and (2) Drs. Sabourin's and Bilezikjian's consultative examinations reported "largely intact range of motion." (ECF No. 16 at 7–8.) The Court agrees with the Commissioner in part and finds that the ALJ provided at least one specific and legitimate reason supported by substantial evidence for rejecting Dr. Dysart's opinion.

The first reason offered by the Commissioner, that the ALJ found Dr. Dysart's earlier treatment records inconsistent with the MSS,[8] was expressed by the ALJ in the hearing

---

very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[8] The Court notes that the Commissioner's specific argument—that Dr. Dysart had consistently reported "full range of motion and no evidence of spinal deformity"—strips Dr. Dysart's findings of their context. Dr. Dysart's treatment notes show that he completed a physical examination of Plaintiff and reported "full range of motion of all *joints*" under the entry for "*extremities*." (AR 250, 294, 299 (emphasis added).) None of Dr. Dysart's records address Plaintiff's range of motion in his lower back/lumbar spine. Even the ALJ

decision.   More precisely, the ALJ reasoned that Dr. Dysart's assertions were not "supported by the evidence" because Dr. Dysart previously reported that Plaintiff "had a full range of motion of all joints."  (AR 19.)  Although specific, the Court does not find that this rationale constitutes a legitimate reason to reject Dr. Dysart's opinion.

It is true, as highlighted by the ALJ, that the single medical finding undergirding the entirety of Dr. Dysart's opinion was that Plaintiff had a limited range of motion in his back.  If Dr. Dysart's treatment notes for the physical examinations of Plaintiff prior to the MSS had indicated full range of motion in Plaintiff's *back*, this would readily have served as a specific and legitimate reason for rejecting the opinion.  However, Dr. Dysart's treatment notes for the three physical examinations of Plaintiff prior to the MSS indicated "full range of motion *in all joints*" under the entry for "*extremities*" and are not probative of whether or not Dr. Dysart previously found Plaintiff to have limited range of motion in his back.  Therefore, the Court finds that the ALJ's rationale—that Dr. Dysart's assertions were not supported by the evidence because Dr. Dysart previously found that Plaintiff had a full range of motion of all joints—is not a legally sufficient reason to reject Dr. Dysart's opinion.

The second reason offered by the Commissioner, that Dr. Sabourin's and Dr. Bilezikjian's consultative examinations reported "largely intact range of motion," was also proffered by the ALJ.  Specifically, the ALJ reasoned that Dr. Dysart's assertions were not supported by the evidence because "on both of the claimant's Orthopedic examinations, he had minimal restricted ranges of motion, and minimal pain, described as tenderness."  (AR 19.)  The ALJ previously noted that, upon examination, Dr. Sabourin found that Plaintiff's "lumbar spine range of motion was normal and painless," and Dr. Bilezikjian found "some reduced ranges of motion [in the lumbar spine], but no tenderness to palpation, and no

---

expressly noted that Dr. Dysart had previously found that Plaintiff had "full range of motion of all joints."  (AR 19.)

evidence of increased muscle tone or spasm." (AR 18.)  The Court therefore finds that this stated reason for rejecting Dr. Dysart's opinion is legally sufficient.  *See Orn*, 495 F.3d at 632 ("When an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are substantial evidence." (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985))).

As set forth above, Plaintiff argues for the first time in his reply that the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Dysart's opinion.  Plaintiff criticizes the ALJ for relying on Dr. Bilezikjian's findings when rejecting Dr. Dysart's opinion because Dr. Bilezikjian examined Plaintiff two years before Dr. Dysart completed the MSS.  (*See* ECF No. 17 at 2.)  The Court is mindful of authority that, as a general matter, a more recent medical opinion may have more probative value than an older opinion about a plaintiff's abilities.  *See, e.g.*, *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative." (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985))). However, this authority is applicable only if the record reflects that the plaintiff's condition had worsened in the period between the two opinions.  *See Stone*, 761 F.2d at 532 (finding that the most recent medical opinion was the most probative because the claimant's condition "was progressively deteriorating"); *see also Young*, 803 F.2d at 968 (declining to afford greater weight to a more recent medical report when it was "far from clear that [the plaintiff's] condition was progressively deteriorating").  Here, the record provides no indication that Plaintiff's lower back impairment worsened in the two years between Dr. Bilezikjian's and Dr. Dysart's opinions such that the more recent opinion should necessarily be afforded more weight.  There is no evidence relating to Plaintiff's lower back impairment in the time period between the two opinions.  The only medical records during this time are Dr. Dysart's treatment notes from July 30 and August 7, 2015, which provide that Plaintiff had "full range of motion of all joints" but which say nothing about Plaintiff's lower back.  (AR 294, 299.)  The ALJ's failure to comment on or consider the ///

length of time between Dr. Dysart's MSS and Dr. Bilezikjian's opinion does not negate his stated rationale for rejecting Dr. Dysart's opinion, as Plaintiff seems to contend.

        **b.** *Whether the ALJ considered the § 404.1527(c) factors and appropriately weighed Dr. Dysart's opinion*

"In addition to providing specific reasons for rejecting a treating doctor's opinion, the ALJ must consider the factors provided in 20 C.F.R. § 404.1527[(c)]." *Quinones v. Comm'r of Soc. Sec.*, Case No.: 19CV274-W (BLM), 2019 WL 3817997, at *8 (S.D. Cal. Aug. 14, 2019), *adopted by* 2019 WL 3817997 (S.D. Cal. Sept. 4, 2019). As stated above, Plaintiff maintains that the ALJ did not discuss any of the § 404.1527(c) factors, or even mention § 404.1527. (ECF No. 15-1 at 6.) Plaintiff particularly focuses his argument on the ALJ's failure to discuss the first § 404.1527(c) factor—the length of Dr. Dysart's treating relationship with Plaintiff—in the hearing decision. (*See id.* at 5.)

Plaintiff is correct that the ALJ did not explicitly analyze each of the § 404.1527(c) factors when assigning Dr. Dysart's opinion minimal weight. However, the Ninth Circuit has never held that an ALJ must do so. Although the Ninth Circuit held in *Trevizo v. Berryhill* that a failure to "consider" the § 404.1527(c) factors "alone constitutes reversible error," 871 F.3d 664, 676 (9th Cir. 2017), courts in this District have held that *Trevizo* does not "demand a full-blown written analysis of all the regulatory factors." *Hoffman v. Berryhill*, Case No.: 16-cv-1976-JM-AGS, 2017 WL 3641881, *4 (S.D. Cal. Aug. 24, 2017), *adopted by* 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017); *e.g.*, *Guzman v. Berryhill*, 356 F. Supp. 3d 1025, 1034 (S.D. Cal. 2018) ("Although an ALJ need not explicitly go through the list of regulatory factors, there must be some indication that he considered each in his analysis."); *Yantos v. Berryhill*, Case No.: 15cv02733 JAH-BGS, 2018 WL 899126, at *6 (S.D. Cal. Feb. 14, 2018) ("The ALJ is certainly required to consider all of the [§ 404.1527(c)] factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in an ALJ's decision."). Additionally, in an unpublished decision decided after *Trevizo*, the Ninth Circuit clarified that an ALJ "is not

///

required 'to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c).'" *Kelly*, 732 F. App'x at 562 n.4.

The hearing decision sufficiently indicates that the ALJ considered the § 404.1527(c) factors when weighing Dr. Dysart's opinion. Contrary to Plaintiff's assertion that the ALJ did "not discuss any factor or even mention 20 C.F.R. § 4041527," (ECF No. 15-1 at 4), the ALJ expressly stated that he "considered [the] opinion evidence in accordance with the requirements of 20 C.F.R. [§] 404.1527," (AR 20). *See, e.g.*, *Timothy K. v. Saul*, Case No.: 3:18-cv-1859-AJB-RBM, 2019 WL 5654116, at *11 (S.D. Cal. Oct. 30, 2019) (finding that the ALJ properly considered the § 404.1527(c) factors where he "specifically wrote that he 'considered opinion evidence in accordance with the requirements of [§ 404.1527]'"), *adopted by* 2020 WL 42771 (S.D. Cal. Jan. 3, 2020). Although the ALJ made this statement at the RFC stage, the Court finds that the statement sufficiently indicates that the ALJ considered the § 404.1527(c) factors when weighing Dr. Dysart's opinion at Step Two.

Moreover, evidence of the ALJ's consideration of the factors appears in the ALJ's analysis of Dr. Dysart's opinion. The ALJ acknowledged that Dr. Dysart was Plaintiff's treating physician[9] and considered the supportability[10] of his opinion, observing that Dr.

---

[9] The Court recognizes that an ALJ's "cursory acknowledgment" of a physician as a treating physician is not, by itself, enough to show that the ALJ properly considered the § 404.1527 factors. *See Kelly*, 732 F. App'x at 562 n.4. Here, however, the ALJ expressly stated that he considered the opinion evidence with the requirements of § 404.1527, and there are other indications that the ALJ considered the § 404.1527(c) factors besides his acknowledgment that Dr. Dysart was Plaintiff's treating physician.

[10] With respect to the supportability factor, § 404.1527(c) provides in pertinent part that:

> [t]he more a source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.

Dysart provided little in the way of clinical findings to support the extreme conclusion that Plaintiff was limited to sedentary work with significant postural limitations. The ALJ wrote, "When asked what medical findings would undergird [Dr. Dysart's] rather severe assertions, [Dr. Dysart] stated 'limited range of motion of back.' Positionally, he found that claimant could essentially never twist, crouch, or climb stairs or ladders, again, due to 'limited back range of motion.'" *See also Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (stating that a treating physician's opinion may be "entitled to little if any weight" where the physician "presents no support for her or his opinion."); SSR 96-2P, 1996 WL 374188, at *2 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . ."). The ALJ also stated that he found Dr. Dysart's opinion inconsistent[11] with the record, for Plaintiff's lower back showed only "minimal restricted ranges of motion, and minimal pain, described as 'tenderness'" at both orthopedic examinations. (AR 19.) Thus, the Court finds that the hearing decision sufficiently indicates that the ALJ followed the appropriate methodology when weighing Dr. Dysart's opinion and that he considered the § 404.1527(c) factors.

For the forgoing reasons, the Court finds that the ALJ did not err in rejecting Dr. Dysart's opinion as a treating physician or in assigning it less than controlling weight. The ALJ provided at least one specific and legitimate reason supported by substantial evidence for rejecting Dr. Dysart's opinion and expressly stated that he considered the opinion evidence in accordance with 20 C.F.R. § 404.1527.

///

///

---

20 C.F.R. § 404.1527(c)(3).

[11] With respect to the consistency factor, § 404.1527 instructs that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(3).

**B.** **Whether the ALJ improperly rejected Dr. Sabourin's opinion that Plaintiff was restricted to light work**

    1.  <u>Parties' Arguments</u>

As addressed above, Plaintiff's Motion for Summary Judgment focuses predominantly on the minimal weight the ALJ gave to Dr. Dysart's opinion and the ALJ's duty to consider the factors set forth in § 404.1527(c) when giving Dr. Dysart's opinion less than controlling weight. However, Plaintiff also argues briefly that the ALJ erred in weighing the opinion of consultative examiner Dr. Sabourin. Plaintiff contends that the ALJ failed to "provide any reasoning what so ever [sic] as to why he gives greater weight to Dr. Bilezikj[ia]n than to Dr. Sabourin" when both doctors are "board certified orthopedist[s]" who "only saw [Plaintiff] once." (ECF No. 15-1 at 5.)

In opposition, the Commissioner argues that the ALJ "did not wholly reject Dr. Sabourin's assessed restrictions" but "properly afforded them less weight" because "they were inconsistent with the normal clinical findings from subsequent physical examinations." (ECF No. 16 at 8.) The Commissioner acknowledges that Dr. Sabourin observed, and the ALJ noted, that "Plaintiff had significant effusions and reduced range of motion in his knees during the May 2014 consultative examination." (*Id.*) The Commissioner argues, however, that "Plaintiff consistently had full (or nearly full) range of motion and no evidence of effusion or swelling during physical examinations performed after Plaintiff's alleged onset date of disability in August 2014," and thus, "the positive clinical findings underlying Dr. Sabourin's May 2014 conclusions were isolated." (*Id.* (emphasis omitted).) The Commissioner contends that "the ALJ reasonably found that the subsequent normal examinations undercut the probative value of [Dr. Sabourin's] opinion about Plaintiff's restriction to a range of light work." (*Id.*)

    2.  <u>Legal Standard</u>

As previously stated, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834.

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships.  As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons.  Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); *Lester*, 81 F.3d at 830). When the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician—including another examining physician—he must give "specific and legitimate reasons" for doing so.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir. 1999).  Thus, "[w]here an ALJ does not explicitly . . . set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

    3.   <u>Discussion</u>

At Step Two, the ALJ provided a detailed summary of Dr. Sabourin's findings, after which he stated as follows:

> [Dr. Sabourin] found the claimant could perform a wide range of light level exertional tasks, with medium exertional level pushing and pulling.  He opined that the claimant could stand, walk or sit up to six hours in an 8-hour workday.  (Exhibit 3F).  The undersigned ALJ has taken this evaluation and assessment into consideration and . . . concurs in part.  The undersigned ALJ does find that the claimant could perform medium level tasks pertaining to lifting and carrying per the record as a whole.  Accordingly, the undersigned gives this assessment some to substantial weight, but not great weight.

(AR 18.)  The ALJ went on to provide a detailed summary of Dr. Bilezikjian's findings, after which he stated: "Dr. Bilez[i]kjian opined that the claimant could perform a while [sic] range of medium level exertional tasks with some modifications pertaining to positional tasks such as kneeling and squatting on an occasional basis.  The undersigned *essentially* concurs and gives this assessment significant weight."  (AR 19.)

///

The ALJ thereafter determined that Plaintiff had the RFC to perform a wide range of medium work as defined in 20 C.F.R. § 404.1567(c).  (AR 20.)  Before moving on to Step Four, the ALJ concluded as follows:

> In sum, the above residual functional capacity assessment is supported by the medical evidence as a whole.  The claimant's X-rays show early osteoarthritis and later on "early to moderate" degenerative disease.  The claimant is not on pain management protocol.  Additionally, during two orthopedic consultative examinations, he had minimal positive findings regarding restricted ranges of motion or pain.  The claimant has normal, non-antalgic gait, and negative straight leg raising tests and Drawer tests.  The undersigned is therefore persuaded that the claimant is able to perform a wide range of medium level exertional tasks.

(AR 21.)

Because Dr. Sabourin's opinion that Plaintiff was restricted to light work was controverted by Dr. Bilezikjian's opinion that Plaintiff could perform medium work, the ALJ was required to set forth specific and legitimate reasons based on substantial evidence in the record for rejecting Dr. Sabourin's opinion.  *See Lester*, 81 F.3d at 830–31 ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.").  The Court finds that the ALJ provided legally sufficient reasons for rejecting Dr. Sabourin's opinion, but not for the reasons argued by the Commissioner.

As stated above, the Commissioner defends the ALJ's rejection of Dr. Sabourin's opinion that Plaintiff was restricted to light work by arguing that Dr. Sabourin's findings as to the significant effusion and swelling of Plaintiff's left knee were "isolated" and that "the ALJ reasonably found that the subsequent normal examinations undercut the probative value of [Dr. Sabourin's] opinion."  (ECF No. 16 at 8.)  These arguments, however, were not proffered by the ALJ, and the Court is "constrained to review [only] the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *accord Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").  The

Court cannot affirm the ALJ's rejection of Dr. Sabourin's opinion based on the post hoc rationalizations offered by the Commissioner. *Bray*, 554 F.3d at 1125. Nowhere in the hearing decision does the ALJ reason that Dr. Sabourin's findings were "isolated" or that "subsequent normal examinations"[12] undercut Dr. Sabourin's opinion restricting Plaintiff to light work.

Instead, the ALJ stated that he rejected Dr. Sabourin's opinion that Plaintiff could perform light work because "the record as a whole," including Dr. Sabourin's own findings, supported a conclusion that Plaintiff could "perform medium level tasks pertaining to lifting and carrying." (AR 18.) After rejecting Dr. Sabourin's opinion, the ALJ did not then immediately identify examples of evidence in the record that supported a finding adverse to Dr. Sabourin's. However, before proceeding to Step Four, the ALJ reasoned that his assessment that Plaintiff could perform medium level work was supported by the record as a whole because: Plaintiff's left knee x-rays showed only early to moderate degenerative disease; Plaintiff was "not on a pain management protocol"; and both orthopedic examinations reported minimal restricted ranges of motion, a normal gait, negative straight leg raising tests, and negative Drawer tests. (AR 21.) The Court recognizes that ALJ did not explicitly tie this reasoning to his earlier rejection of Dr. Sabourin's opinion. Nevertheless, the Court finds that it may appropriately credit the

---

[12] For the proposition that there were multiple "subsequent normal examinations" following Dr. Sabourin's examination of Plaintiff, the Commissioner cites to Dr. Bilezikjian's finding that, upon examination, "there was no evidence of swelling, effusion, erythema, warmth, or deformity of any of the joints of the lower extremities" and Plaintiff's knees showed a full range of motion. (ECF No. 16 at 8 (citing AR 282–83.) The other "subsequent normal examinations" the Commissioner cites to are two office visits with Dr. Dysart on July 30 and August 7, 2015, where Plaintiff saw Dr. Dysart for hypertension, acid reflux, and an irregular heartbeat. (*Id.* (citing AR 294, 299).) At both appointments, Dr. Dysart completed a physical exam and noted under extremities: "normal full range of motion of all joints." (AR 294, 299.) The Commissioner otherwise cites to an office visit with Dr. Dysart on October 30, 2012, which was well before Dr. Sabourin's examination of Plaintiff on May 20, 2014. (ECF No. 16 at 8 (citing AR 275).)

ALJ's stated reasons for assigning Plaintiff a medium RFC as the specific and legitimate reasons for rejecting Dr. Sabourin's opinion that Plaintiff was limited to light work.  *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency "explains its decision with 'less than ideal clarity,' we must uphold it 'if the agency's path may be reasonably discerned.'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004))); *cf. Lewis*, 236 F.3d at 512 (upholding rejection of lay witness testimony where "the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link the determination to those reasons"). An ALJ meets his burden of providing specific, legitimate reasons for rejecting a medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041  (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  And here, the ALJ has done just that.  Accordingly, the Court finds that the ALJ did not err in rejecting Dr. Sabourin's opinion that Plaintiff was restricted to light work or in weighing his opinion.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED** and judgment be entered affirming the decision of the Commissioner.  **IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **<u>November 30, 2020</u>**.  The document should be captioned "Objections to Report and Recommendation."

///

///

///

///

///

///

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than __December 7, 2020__. The parties are advised that a failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  November 10, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

18-cv-02624-LAB-JLB